John W. Sweeny, J.
Defendant physician has moved to dismiss two causes of action alleged by plaintiff mother and her infant daughter. Both causes of action essentially seek the same quantum of damages for the economic injury which has *511 been and will be sustained as the result of the birth of the infant plaintiff following the alleged negligence of the defendant in performing a tubal ligation upon the plaintiff mother.
Each cause of action contains two separate theories for recovery, viz., breach of warranty and negligence.
Plaintiffs’ warranty actions must be dismissed since the complaint does not allege the existence of a special contract, accompanied by consideration separate and distinct from the fee for the sterilization operation (Robins v Finestone, 308 NY 543; Herrera v Roessing, 533 P2d 60 [Col]; Rogala v Silva, 16 Ill App 3d 63; Ann 43 ALR3d 1221).
The remaining issue then is whether or not New York State recognizes a negligence cause of action against a physician for the economic loss which is sustained due to an unwanted conception and subsequent birth of a normal and healthy infant. Plaintiffs herein seek to recover both for medical expenses incident to the pregnancy and for the expense of rearing and educating the infant.
The Appellate Division of the Fourth Department has sanctioned such a cause of action against a physician who had misprescribed birth control medication and then misdiagnosed a pregnancy. The cause of action which the court recognized was one which sought recovery for educational and medical expenses of the child as well as for the mother’s inability to earn a living by reason of her obligation to raise the child (Ziemba v Sternberg, 45 AD2d 230). In Cox v Stretton (77 Misc 2d 155), the court recognized a cause of action on behalf of a parent for the damages incurred and to be incurred in raising, supporting and educating an unplanned, and as in^this case, healthy child who was conceived after an alleged improperly performed vasectomy. ^
In both Ziemba and Cox (supra), the courts concluded that the decision in Stewart v Long Is. Coll. Hosp. (35 AD2d 531, affd 30 NY2d 695 [parents of deformed child suing for mental anguish based on hospital’s refusal to perform abortion in 1964]) was no longer viable due to the 1970 amendment of section 125.05 of the Penal Law.
Notwithstanding these two precedents, there is the more recent and authoritative decision of the Second Department Appellate Division in Greenberg v Kliot (47 AD2d 765, lv to app den 37 NY2d 707), as well as the First Department’s decision in Johnson v Yeshiva Univ. (53 AD2d 523), to be considered.
*512 Contrary to Ziemba and Cox (supra), each of these later cases relies upon the continued viability of Stewart (supra), and the proposition stated therein that causes of action based on failure to terminate (abort) life were not previously known to the law. The Stewart court had concluded that such causes of action should await legislative sanction and should not be accepted by judicial fiat, citing Williams v State of New York (18 NY2d 481) and Tobin v Grossman (24 NY2d 609).
In Greenberg (supra), the mother of a physically and mentally defective infant brought suit against a physician who allegedly had refused to perform an "amniocentesis test”. The parent alleged that had the test been performed, the results would have indicated a defective fetus and that she would have obtained a therapeutic abortion. The complaint sought damages on behalf of the infant for its own agony of existence and damages on behalf of the mother for the pain and suffering, as well as mental anguish sustained both during the time of gestation and the anguish and hardship which she would endure raising a handicapped child.
The dismissal of the "wrongful life” causes of action in Greenberg (supra), was affirmed by the Appellate Division with only a very terse reference to Stewart (supra).
In Johnson (supra), the defendant medical center and doctors were alleged to have in substance failed to order or properly perform amniotic fluidjbests, falled"tb have advised the plaintiff mother that she should have legally aborted a fetus, and in fact incorrectly advised her that the infant in question would be born without mental or physical defects. In the fifth cause of action, the father of this handicapped infant sued for damages for the past, present and future care and treatment of his infant son. The Appellate Division of the First Department affirmed the dismissal of this cause of action for the expenses of bringing up a physically and mentally defective child with the admonition that such a cause of action " 'should await legislative sanction and should not be accepted by judicial fiat’ ” and cited both Stewart (supra) and Greenberg (supra).
Based on these precedents and the reasoning and dicta of the majority in the recent decision of this department in Howard v Lecher (53 AD2d 420), this court believes that there are still serious questions of public policy involved in any suit where damages are sought solely due to the existence of life, or "wrongful life”.
*513 It is not within the province of the judiciary to decide that the existence of life, and in this case a normal healthy life, is a wrong for which damages can be recovered (cf. Williams, supra, p 484). While there are also legal precedents in other States supporting a cause of action for wrongful life and a physician’s liability for the support of an unplanned child (see Martineau v Nelson, 247 NW2d 409 [Minn]; Custodio v Bauer, 251 Cal App 2d 303, Ann 27 ALR3d 884), there are many well-reasoned authorities to the contrary (see Rieck v Medical Protective Co., 64 Wis 2d 514 [damages held out of proportion to the culpability of physician and suggestion that such a cause of action would create a new form of surrogate parent]; Coleman v Garrison, 349 A2d 8 [Del] [value of human life outweighs any "damage” attributed to birth]; Terrell v Garcia, 496 SW2d 124 [Tex] [damages speculative and public policy considerations]).
If recovery for physical pain and mental anguish resulting from the birth of a deformed child is not known to the law in this State (Stewart, Greenberg, and Howard, supra), this court has little difficulty in reaching the conclusion that a recovery against a physician for the cost of raising a normal child is even less recognizable at law and that a radical departure from the common law permitting a cause of action for "wrongful life” should await legislative sanction.
The court notes the recent decision of the Court of Claims in Paul v State of New York (88 Misc 2d 972), where apparently the damage which resulted from an alleged improperly performed bilateral tubal ligation was the creation of a condition which precipitated an ectopie or tubular pregnancy. While the issue before that court was one involving only the timeliness of the plaintiff’s claim, surely a motion aimed at the merits of a cause of action alleged against a physician whose negligent conduct created a condition which led to a dangerously abnormal pregnancy should be denied.
However, in the instant case, the defendant’s alleged malpractice did not create a new or dangerous condition. The plaintiff’s physical condition was apparently unaltered and it would seem that without a specific warranty, a physician should only be liable for the financial loss incident to the unsuccessful sterilization operation and the pain and suffering of said unsuccessful operation.
Accordingly, defendant’s motion to dismiss is granted without prejudice to plaintiff mother’s right to amend her com *514 plaint in accordance with this decision within 20 days of the date of entry of the order to be entered herein.