BUSHMAN v BURNS CLINIC MEDICAL CENTER, P. C. (AFTER REMAND)

Docket No. 77-883. Submitted December 8, 1977, at Grand Rapids.— Decided May 22, 1978. Leave to appeal applied for.

Thomas Bushman and his wife Kay Bushman filed a complaint in the Emmet Circuit Court against Burns Clinic Medical Center, P. C., and John Hall, M. D., alleging medical malpractice and breach of warranty in the performance of a vasectomy on the plaintiff husband. The plaintiff wife became pregnant and gave birth to a healthy child after the vasectomy. The circuit court granted the defendant's motion for accelerated judgment based upon expiration of the statute of limitations. Plaintiffs appealed to the Court of Appeals which, in an unpublished opinion, reversed and remanded the case for trial. On remand to the Emmet Circuit Court, Martin B. Breighner, J., the jury returned a verdict in favor of defendants and a judgment of no cause of action was entered against the plaintiffs. Plaintiffs appeal. *Held:*

The "benefits rule" applicable in wrongful life actions, which states that any damages incurred by the plaintiffs should be offset by any benefits received from having the blessing of a healthy child, does not apply in an action for damages incurred for wrongful pregnancy where the plaintiffs are not seeking the costs of raising the child as damages. Damages for wrongful pregnancy are established prior to the child's birth; thus, benefits received from raising the child are logically severable from the damages already incurred where the circumstances indicate this is equitable. The plaintiffs should be allowed their probable damages for the wife's pain, suffering and discomfort as a result of the pregnancy, the cost of a vasectomy, the husband's loss of his wife's comfort, companionship, services and the loss of her consortium limited to the loss from the

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 135, 216, 217.

Medical malpractice, and measure and element of damages, in connection with sterilization or birth control procedures. 27 ALR3d 906.

pregnancy and immediately after the birth, and the medical expenses incurred as a result of the pregnancy.

Reversed and remanded.

DANHOF, C. J., dissented and would hold that the plaintiffs' voluntary tactic in disclaiming the cost of raising the child as an element of damages does not operate to preclude application of the "benefits rule" in establishing damages; therefore, the benefits of the unplanned child may be weighed against all the elements of claimed damages.

OPINION OF THE COURT

1. NEGLIGENCE—MALPRACTICE—MEDICAL MALPRACTICE—VASECTOMY— DAMAGES—BENEFITS RULE—UNPLANNED CHILD.

The "benefits rule" in wrongful life actions, that any damages incurred by the plaintiffs should be offset by the benefits received from having the blessing of a healthy child, does not apply in an action for damages incurred for wrongful pregnancy, namely the mental distress, anxiety, discomfort, and the accompanying physical, mental, and financial effects caused by an unwanted pregnancy where the action is for malpractice in the performance of a vasectomy on a husband and the wife later gave birth.

2. NEGLIGENCE—WRONGFUL LIFE—PUBLIC POLICY—BENEFITS RULE— WRONGFUL PREGNANCY.

Michigan's public policy does not deny recovery in a wrongful life action where a normal healthy child has been delivered, but recovery in a wrongful life action has been limited by offsetting any benefits received from the child; the public policy reasons expressed in precedent cases for denying recovery and offsetting any benefits are far less convincing in an action for damages for wrongful pregnancy than in the cases which deny recovery for wrongful life.

3. NEGLIGENCE—MALPRACTICE—MEDICAL MALPRACTICE—WRONGFUL PREGNANCY—DAMAGES.

The plaintiffs in an action for wrongful pregnancy who allege the negligent performance of a vasectomy may be allowed provable damages only for (1) the pain, suffering and discomfort of the plaintiff wife as a result of her last pregnancy, and (2) the cost of a vasectomy, and (3) the loss to plaintiff husband of the comfort, companionship, services and consortium of plaintiff wife; however, the loss of consortium is limited to the loss arising from pregnancy and immediately after birth, and (4)

the medical expenses incurred by plaintiffs as a result of the pregnancy.

4. NEGLIGENCE—MALPRACTICE—MEDICAL MALPRACTICE—VASECTOMY—
   DAMAGES—SPECULATION—CONJECTURE—SEVERANCE OF DAM-
   AGES.

Damages for wrongful pregnancy in a case where negligent performance of a vasectomy is alleged may be established without speculation and conjecture since such damages are established prior to the child's birth, and thus, any benefits received by the parents from raising the child are logically severable from damages already incurred.

5. NEGLIGENCE—MALPRACTICE—MEDICAL MALPRACTICE—VASECTOMY—
   DAMAGES—WRONGFUL PREGNANCY—SEVERANCE OF DAMAGES—
   CIRCUMSTANCES.

The damages claimed by the plaintiffs in an action for wrongful pregnancy are reasonably and equitably severable from the benefits received from the birth of a healthy child where circumstances indicate that the defendant physician was negligent in performing a vasectomy on the plaintiff father, that the unwanted pregnancy was difficult for the plaintiff mother, a polio victim as a child, and that the plaintiff mother was placed under psychiatric care after threatening suicide after her pregnancy was confirmed.

DISSENT BY DANHOF, C. J.

6. NEGLIGENCE—MALPRACTICE—MEDICAL MALPRACTICE—NEGLIGENT
   STERILIZATION—BREACH OF CONTRACTS—DAMAGES—COST OF
   RAISING CHILD—BENEFITS RULE.

*The plaintiffs' voluntary tactic in an action alleging negligent sterilization and breach of contract, in affirmatively and voluntarily disclaiming the cost of raising an unplanned child as an element of their damages, does not operate to preclude application of the "benefits rule" that the benefits, if any, to these plaintiffs from the unplanned child were to be weighed against all the elements of claimed damages in establishing the plaintiffs' damages.*

7. NEGLIGENCE—MALPRACTICE—MEDICAL MALPRACTICE—VASECTOMY—
   NEGLIGENT STERILIZATION—BENEFITS RULE—DAMAGES.

*The "benefits rule" provides that if the defendant's tortious conduct conferred a benefit to the same interest which was harmed by his conduct the dollar value of the benefit is to be subtracted from the dollar value of the injury in arriving at the*

*amount of damages properly awardable; the benefits of an
unplanned child may be weighed against all the elements of
claimed damages in an action where the negligent performance
of a vasectomy is alleged, since pregnancy and its attendant
anxiety, incapacity, pain, and suffering are inextricably related
to child bearing, and it would not be sound to attempt to
separate those segments of damages from the economic costs of
an unplanned child in applying the rule.*

*John D. Hayes,* for plaintiffs.

*Clark, Stroup, Brown, MacKenzie & Pointner,*
for defendants.

Before: Danhof, C. J., and T. M. Burns and
M. J. Kelly, JJ.

M. J. Kelly, J. On September 13, 1973, Thomas
Bushman and Kay Bushman filed a complaint
against Burns Clinic Medical Center, P. C., and
John Hall, M. D., for damages for medical mal-
practice and breach of warranty. On December 3,
1973, the Emmet County Circuit Court granted
defendant's motion for an accelerated judgment
based upon the expiration of the statute of limita-
tions. MCL 600.5805, 600.5838; MSA 27A.5805,
27A.5838. This Court reversed that decision, *Bush-
man v Burns Clinic Medical Center, P. C.,* (Docket
No. 19333, decided December 4, 1974 [unreported]),
and remanded the case for trial.

Plaintiffs were represented by new counsel at
trial. In his opening statement to the jury, plain-
tiffs' counsel informed the court that plaintiffs
were limiting their cause of action to money dam-
ages for mental distress,[1] anxiety, discomfort, and

_____

[1] In *Green v Sudakin,* 81 Mich App 545, 549; 265 NW2d 411 (1978),
this Court recognized mental anguish as an element for breach of
contract to perform a tubal ligation. We believe the reasoning in that
case is applicable here:

"The Court concluded that the contract was highly personal in

the accompanying physical, mental, and financial effects caused by an unwanted pregnancy. He remarked that those claims were included in the original five-count complaint. During trial plaintiffs did not introduce any proofs on a number of other damage allegations found in the original complaint, but proceeded with a claim narrowed to the issue of damages incurred for wrongful pregnancy as distinguished from wrongful birth.

On February 4, 1977, judgment of no cause for action in favor of defendants was entered upon a January 26, 1977, jury verdict. Plaintiffs appeal of right.

This case involves a vasectomy performed on plaintiff husband by defendant doctor. The vasectomy was ineffective since plaintiff wife later became pregnant with their fifth child. The child was and is in good health.

The particular factual situation presents us with what appears to be a case of first impression. One central issue is controlling and dispositive of this appeal, requiring reversal and remand for a new trial because of erroneous instructions and arguments to the jury. The defense theory approved by the trial court was that any damages incurred by the plaintiffs should be offset by the benefits received from having the blessing of a healthy child.

The trial court relied on *Troppi v Scarf,* 31 Mich App 240; 187 NW2d 511 (1971), *lv den,* 385 Mich 753 (1971). But reliance on *Troppi* is misplaced. Aside from damages incurred in a wrongful pregnancy, the plaintiffs in *Troppi* were seeking the economic costs of rearing their eighth child. The child was conceived after the mother had taken a

---

nature, and that no reasonable person could doubt that mental pain and suffering were within the contemplation of the parties in the event that the physician failed to perform the agreed-upon operation."

drug, provided to her by a pharmacist, represented to be a contraceptive. It actually was a mild tranquilizer.

Plaintiffs in the present case abandoned damage allegations for the economic cost of raising their child, prior to the commencement of trial. We are aware that the *Troppi* Court did conclude that damages incurred during pregnancy should not be separated from damages for the economic costs of rearing a child. The Court stated:

> "Since pregnancy and its attendant anxiety, incapacity, pain, and suffering are inextricably related to child bearing, we do not think it would be sound to attempt to separate those segments of damage from the economic costs of an unplanned child in applying the 'same interest' rule. Accordingly, the benefits of the unplanned child may be weighed against all the elements of claimed damage." 31 Mich App at 255.

The following discussion of case law and public policy leads us to the conclusion that the "benefits rule" set forth in *Troppi* should not apply to an action narrowly confined to damages for wrongful pregnancy and not wrongful life. To the extent this is inconsistent with *Troppi,* we stand in disagreement.

Case law in the various jurisdictions is divided on whether or not to allow recovery for wrongful life and make a physician liable for an unplanned child because of his negligent sterilization treatment. A recent New York case noted: "Causes of action for 'wrongful life' have consistently met with judicial disapproval not only in New York State but in other jurisdictions as well". *Karlsons v Guerinot,* 57 App Div 2d 73, 79; 394 NYS2d 933, 937 (1977). See *Clegg v Chase,* 89 Misc 2d 510; 391 NYS2d 966 (1977), *Terrell v Garcia,* 496 SW2d 124

(Tex Civ App, 1973), *cert den* 415 US 927; 94 S Ct 1434; 39 L Ed 2d 484 (1974), *criticizing Troppi v Scarf, supra.*

The *Clegg* court did note that "there are many well reasoned authorities to the contrary" allowing damages for wrongful life. *Citing Martineau v Nelson,* 247 NW2d 409 (Minn, 1976), *Custodio v Bauer,* 251 Cal App 2d 303; 59 Cal Rptr 463; 27 ALR2d 884 (1967). See also *Troppi v Scarf, supra, Terrell v Garcia, supra,* at 128 (Cadena, J., dissenting), *Hays v Hall,* 477 SW2d 402 (Tex Civ App, 1972), *rev'd on other grounds,* 488 SW2d 412 (Tex, 1972). See generally Anno: *Medical Malpractice, and Measure and Element of Damages, in Connection with Sterilization or Birth Control Procedures,* 27 ALR3d 906, Anno: *Tort Liability for Wrongfully Causing One to be Born,* 22 ALR3d 1441. Various jurisdictions have denied recovery in a wrongful life action when a normal healthy child has been delivered without harm to the mother on the grounds that the benefits of raising a child make the granting of any damages contrary to public policy. 27 ALR3d at 916. Michigan has determined that there is no public policy reason to deny recovery, but has limited recovery by offsetting any benefits received. *Troppi v Scarf, supra.*

Plaintiffs in the instant case claim to have been damaged by the tortious conduct of the defendant doctor in performing a vasectomy negligently. Since the plaintiffs have narrowed their claim of damages to wrongful pregnancy,[2] they have

---

[2] In a recent Minnesota case, *Sherlock v Stillwater Clinic,* 260 NW2d 169 (Minn, 1977), the Minnesota Supreme Court recognized a cause of action for "wrongful conception" wherein "compensable damages may be recovered for the birth of a normal, healthy child proximately caused by a negligently performed sterilization operation." In that case as in the case at bar reversal was mandated for errors in submission of the damages issues to the jury. That decision presents an excellent overview of the emerging case law on medical

framed an action wherein the policy reasons for denying recovery and offsetting any benefits are far less convincing than in the cases denying recovery for wrongful life.

In *Coleman v Garrison*, 327 A2d 757 (Del Super, 1974), *aff'd* 349 A2d 8 (Del, 1975), a Delaware court held that there should be no cause of action for damages for wrongful life, but nevertheless found sufficient reason to allow a cause of action for wrongful pregnancy. The court stated:

"It is the view of this Court that there should be no cause of action so established as to allow damages for 'wrongful life.' The preciousness of human life should not be held to vary with the circumstances surrounding birth. To make such a determination would, indeed, raise the unfortunate prospect of ruling, as a matter of law, that under certain circumstances a child would not be worth the trouble and expense necessary to bring him into the world. It is not difficult to understand the reluctance of many distinguished jurists to find that the birth of a child is an injury for which plaintiff should deserve an award of damages.

"That is not to say, however, that the plaintiff has not suffered a recognizable injury where avoidable pregnancy has resulted from faulty medical procedure. To the contrary, a ruling that no recognizable cause of action could exist under such circumstances would leave the medical profession virtually immune from liability for improper treatment of patients justifiable *[sic]* seeking to avoid pregnancy.

"A more appropriate resolution of the difficulties presented, and the one hereby adopted, is to view the action as one for 'wrongful pregnancy' rather than one for 'wrongful life' thereby limiting the scope of the injury to the very real expenses, and obvious difficulties attending the unexpected pregnancy of a woman.

"Limitation of the cause of action in such a manner is valid since to do otherwise, would be to invite unduly

malpractice cases for failure to effectuate birth control measures consisting of operations to be performed on both husband and wife.

speculative and ethically questionable assessments of such matters as the emotional affect of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of raising an unplanned and, perhaps, an unwanted child in varying family environments. Speculative damages are, quite simply, not recoverable in this State. *See Laskowski v Wallis,* 205 A.2d 825 (Del. Supr. 1964); *Henne v Balick,* 1 Storey 369, 146 A.2d 394 (Del. Supr. 1958)." 327 A2d at 761.

In Michigan, while we recognize an action to allow damages for "wrongful life" offset by the benefits received by the plaintiffs from that life, the question is: should those benefits offset the potential damages for "wrongful pregnancy"? The *Coleman* case, although not binding on this Court, does suggest that we should treat damages for "wrongful pregnancy" differently than for "wrongful life". We do not feel constrained by the *Troppi* Court to follow the "benefits rule" under the instant facts since *Troppi* was primarily concerned with damages sought for "wrongful life". We adopt the following findings by the *Coleman* court as applicable in the present case:

"In summary, this Court finds that the plaintiffs may be allowed provable damages only for the following:

1. The pain, suffering and discomfort of [plaintiff wife] as a result of her last pregnancy; and

2. The cost of a [vasectomy]; and

3. The loss to [plaintiff husband] of the comfort, companionship, services and consortium of [plaintiff wife]; however, the loss of consortium is limited to the loss arising from pregnancy and immediately after birth; and

4. The medical expenses incurred by [plaintiffs] as a result of the * * * pregnancy." 327 A2d at 761–762.

Further support can be found in *Custodio v Bauer, supra,* a California case wherein plaintiffs

sought to recover damages resulting from the pregnancy of the plaintiff wife following the failure of a sterilization operation. In reversing a dismissal entered against the plaintiff, the *Custodio* court held in part that if the plaintiffs established a violation of duty by the defendants they should be awarded damages for the expenses incurred in undergoing the operation. Furthermore, if the plaintiffs could show "physical complications and mental, physical and nervous pain and suffering which the operation was designed to prevent, they should be able to recover". The court noted that "mental suffering attendant to the unexpected pregnancy because of the complications which may or may not result, the complications that do result, and the delivery of a child are all foreseeable consequences of the failure of the operation".

In *West v Underwood,* 132 NJL 325; 40 A2d 610 (1945), plaintiffs brought an action against defendants for negligently failing to sterilize the plaintiff wife at the time of performing a Caesarean operation. The court noted that there were proofs supporting the allegations. The court ruled that if this were so "[p]laintiffs were entitled to recover for all pain and suffering, mental and physical, together with loss of services and 'any other loss or damage proximately resulting from such negligence' ". See also *Betancourt v Gaylor,* 136 NJ Super 69, 75; 344 A2d 336, 339 (1975), *Anonymous v Hospital,* 33 Conn Supp 126; 366 A2d 204 (1976).

A jury could not be expected to place the value of a child's life to his parents as less than damages incurred during an unwanted pregnancy. To expand the scope of *Troppi* to the instant facts would, in effect, outlaw a cause of action for wrongful pregnancy. Again we quote from *Coleman, supra:*

"[A] ruling that no recognizable cause of action could exist under such circumstances would leave the medical profession virtually immune from liability for improper treatment of patients justifiable *[sic]* seeking to avoid pregnancy." 327 A2d at 761.

Damages may be established without speculation and conjecture. *Cf. Coleman v Garrison, supra,* at 761, *Terrell v Garcia, supra,* at 127–128. In the main the damages for wrongful pregnancy have been established prior to the child's birth, and, thus, any benefits received by the plaintiffs from raising a child are logically severable from damages already incurred. As the *Troppi* Court noted, "[t]he benefits rule allows flexibility in the case-by-case adjudication of the enormously varied claims which the widespread use of oral contraceptives portends". 31 Mich App at 256.

The dissent favors the tactic of the defense in the trial of this case which was supported by the trial court's interpretation of *Troppi v Scarf, supra.* That benefit rule emerged from Restatement Torts, § 920, p 616 which provides:

" 'Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable.' Restatement, Torts, § 920, p 616." *Troppi v Scarf, supra,* at 254.

We believe the last phrase of the quote from the Restatement is applicable here. To allow the defense to shield itself behind the love and affection of the plaintiffs for their healthy and lovable fifth child is less than equitable if indeed the plaintiffs' claims are in fact true. That is, that the physician was negligent, that the plaintiff mother, a polio

victim as a child, had considerable and extreme difficulty with four previous deliveries, that she had a crippling condition of the spine, a significant difference in leg length, a distorted pelvis and had been subjected to extensive labor anywhere from 45 to 50 hours during delivery. Testimony indicates that plaintiff mother was placed under psychiatric care, threatening suicide shortly after her pregnancy was confirmed. Under these circumstances the damages claimed seem reasonably and equitably severable. The real damages are not child centered and the plaintiffs should not be forced to make fictional claims to suit the convenience of the defendants.[3] "The result we reach today is at best a mortal attempt to do justice in an imperfect world." *Sherlock v Stillwater Clinic,* 260 NW2d 169 (Minn, 1977).

Of course, our ruling does not establish that plaintiffs will ultimately be entitled to damages. Issues of contributory negligence and proximate cause, as well as damages, must await jury determination on proper instruction.

We reverse and remand for a new trial consistent with this opinion.

T. M. BURNS, J., concurred.

DANHOF, C. J. *(dissenting)*. Plaintiffs brought this action against defendants alleging negligent sterilization and breach of contract. The unsuccessful sterilization resulted in an unwanted pregnancy and an unplanned child. The jury in this case was instructed, according to the holding of *Troppi v Scarf,* 31 Mich App 240, 255; 187 NW2d 511 (1971), that the benefits, if any, to these plaintiffs from the unplanned child were to be weighed against all

---

[3] From any aspect these cases are distasteful and any solution is a selection of the lesser evil.

the elements of claimed damage. See also *Stephens
v Spiwak,* 61 Mich App 647, 650–651; 233 NW2d
124 (1975). The plaintiffs affirmatively and volun-
tarily disclaimed the cost of raising the child as an
element of their damages. No convincing argu-
ment has been made that this voluntary tactic
should operate to preclude application of the
*Troppi* benefits rule. The *Troppi* rule was intended
to afford juries necessary flexibility in assessing
damages. The majority opinion greatly impairs
that flexibility.

Application of the *Troppi* benefits rule would not
have foreclosed recovery by these plaintiffs had
they sought compensation for all their damages.
See *Green v Sudakin,* 81 Mich App 545; 265 NW2d
411 (1978). If the majority opinion is correct that
application of the *Troppi* benefits rule "would
* * * outlaw a cause of action" on the facts of the
instant case, that is a consequence of the plaintiffs'
tactical decision to seek recovery for only a portion
of their potential damages. I cannot agree that
this is a sufficient reason for rejection of the
*Troppi* benefits rule.

The majority would allow these plaintiffs to split
their cause of action thereby enabling them to
recover for pregnancy damages without any offset
for the benefits, if any, of the unplanned child. I
would follow *Troppi:*

"Thus, if the defendant's tortious conduct conferred a
benefit to the same interest which was harmed by his
conduct, the dollar value of the benefit is to be sub-
tracted from the dollar value of the injury in arriving
at the amount of damages properly awardable.

"Since pregnancy and its attendant anxiety, incapac-
ity, pain, and suffering are inextricably related to child
bearing, we do not think it would be sound to attempt
to separate those segments of damage from the eco-

nomic costs of an unplanned child in applying the 'same interest' rule. Accordingly, the benefits of the unplanned child may be weighed against all the elements of claimed damage." *Troppi, supra,* at 255. (footnotes omitted).

Plaintiffs' arguments on the other issues they have raised have not established any reversible error. Hence, I would affirm.