Sharon A. SCHORK and Al Schork, Movants,

v.

Charles M. HUBER, M.D., Respondent.

Supreme Court of Kentucky.

April 20, 1983.

**862**

Joseph L. White, White, Diamond & Silverthorn, Louisville, for movants.

William P. Swain, Douglas H. Morris, Boehl Stopher Graves & Deindoerfer, Louisville, for respondent.

WINTERSHEIMER, Justice.

This appeal is from an opinion by the Court of Appeals affirming the circuit court which granted a partial summary judgment in an action for negligence determining that the parents of a child cannot recover the costs of rearing a child born pursuant to an unsuccessful sterilization. We affirm.

Dr. Huber performed a sterilization procedure on Sharon A. Schork in 1977, assuring her that such a procedure was 99 percent effective in preventing pregnancy. After sterilization, she returned to the doctor for a checkup, and he advised her she was sterile. Shortly thereafter she began to experience what she thought was a miscarriage, but the doctor again reassured her that she was sterile without any testing. Several months later she discovered that she was pregnant. A healthy boy was born in 1978. Subsequently the parents sued the doctor alleging negligence in the sterilization procedure and the post-operative treatment. In addition to the usual claims for damages resulting from medical malpractice, the parents sought to recover the costs of raising the child and damages for disruption of family life, mental suffering and various claims by the father. The trial court dismissed the claim in a partial summary judgment. The Court of Appeals affirmed.

This Court affirms the opinion of the Court of Appeals because parents cannot recover damages based on the costs of raising a healthy but unexpected child from a doctor following an unsuccessful sterilization procedure.

The parents of a normal healthy child whom they now love have not suffered any injury or damage. The benefits conferred by the child's existence clearly outweigh any economic burden involved. The claimed injury is far too speculative and remote to be reasonably connected to the alleged negligence. Additionally, in a pure legal sense the parents have failed to mitigate the damages which they charge.

It has been previously held by the Court of Appeals in *Maggard v. McKelvey*, Ky. App., 627 S.W.2d 44 (1981), that recovery for such damages is contrary to public policy. We fully agree. That a child can be considered as an injury offends fundamental concepts attached to human life.

Our research indicates that prior to 1967, it was generally recognized that regardless of the question of liability for performance of an unsuccessful sterilization, no damages resulted from the birth of a normal child without permanent harm to the mother of some kind. An early case indicating this position was *Christensen v. Thornby*, 192 Minn. 123, 255 N.W. 620 (1934). The propriety of this position was first challenged by a California court in *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967). Since the *Custodio* decision, numerous cases have held to the contrary including Kentucky in *Maggard, supra. Also see, Coleman v. Garrison*, Del.Super., 349 A.2d 8 (1975); *Wilczynski v. Goodman*, 73 Ill. App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479 (1979); *Berman v. Allan*, 80 N.J. 421, 404 A.2d 8 (1979); *Sala v. Tomlinson*, 73 A.D.2d 724, 422 N.Y.S.2d 506 (1979); *Terrell v. Garcia*, Tex.Civ.App., 496 S.W.2d 124 (1973),

cert. den. 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484; *Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974); *Clegg v. Chase*, 89 Misc.2d 510, 391 N.Y.S.2d 966 (1977).

Generally this Court has followed the rule that remote, uncertain and speculative damages are not recoverable. In regard to this aspect of the claim, a good discussion may be found in the Delaware decision in *Coleman, supra,* and the Alabama case cited in *Boone v. Mullendore*, Ala., 416 So.2d 718 (1982). There is no reason to allow the parents to recover for the costs of raising a child and then place an unreasonable financial burden upon the doctor for a misdiagnosis or possible negligence in performing sterilization. The parents would retain the benefit of having the child while seeking to place the enormous expenses of his raising on the physician.

For an additional discussion of this question, *see, Annot., Tort Liability for Wrongfully Causing One to be Born,* 83 A.L.R.3d 15.

A careful examination of that annotation and various other cases cited by the parties herein indicates that the questions of "wrongful life," "wrongful birth" and "wrongful conception" have troubled the courts of this country for half a century. Our analysis indicates that the majority of decisions have concluded that parents who give birth to a normal healthy child are not entitled to their costs of raising the child from the physician.

Wrongful life is a contradiction in terms. It is contrary to the public policy of this State as expressed by the legislature and interpreted by the courts.

The establishment of a cause of action based on the matter of wrongful conception, wrongful life or wrongful birth is clearly within the purview of the legislature only. The enunciation of public policy is the domain of the General Assembly. We do not propose to invade their jurisdiction in any respect. The courts interpret the law. They do not enact legislation.

While the negligent post-operative treatment of sterilization by the physician may be considered a substantial factor in the birth of a child, that fact alone does not set out recoverable damages for its raising. Certainly the injured could recover compensation from the negligent, but public policy considerations limit the responsibility of those negligent. *Deutsch v. Shein,* Ky., 597 S.W.2d 141 (1980); *Maggard, supra.*

It is the holding of this Court that parents cannot recover damages based on the cost of raising a child from a physician for his alleged negligence. The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., and AKER, GANT and STEPHENSON, JJ., concur.

LEIBSON and VANCE, JJ., dissent by separate opinions.

LEIBSON, Justice, dissenting.

I respectfully dissent from the decision in this case. The issue is not as dramatic as depicted. We are not called upon to decide whether the birth of a normal healthy child is a "wrong." This is not a suit on behalf of the child complaining against the fact of life. We are simply called on to decide whether the cost of raising a child born as a result of a doctor's negligence is a compensable element of damages.

The majority opinion states that "the parents sued the doctor alleging negligence in the sterilization procedure." In fact, the Schorks claim that *after* the surgery, when the mother advised the doctor of symptoms indicating she had suffered a miscarriage, the doctor negligently failed to test to determine whether the sterilization procedure had been successful; thereafter, as a result, conception and birth occurred.

For purposes of summary judgment, we must assume that the doctor was negligent, as alleged, in failing to perform the required test and in advising Mrs. Schork that she was sterile when in fact she was fertile.

The trial court's partial summary judgment specified "that the allegations of the plaintiffs' complaint which seek recovery for the labor and money necessary in rear-

ing the child of the parties whose conception and birth is the subject of this litigation be stricken from the complaint as well as allegations dealing with the disruption of family life, mental suffering and any claims on behalf of the plaintiff, Allen Schork."

The portion of the complaint relating to the mother's medical expenses, pain and suffering, and loss of earnings in connection with the child's birth were not stricken.

The Kentucky Court of Appeals upheld the trial court's partial summary judgment, citing its own previous decision in *Maggard v. McKelvey*, Ky.App., 627 S.W.2d 44 (1981), a decision based on that court's view of "public policy." In *Maggard*, the Court of Appeals stated:

> "Without a clear expression of public opinion, some indication from the legislature or an interpretation by our Supreme Court to the contrary, we conclude that our public policy prohibits the extension of liability to include these damages."

Careful consideration of the subject of "public policy" as a basis for denying damages, leads me to a contrary opinion. In my view:

> "(I)t would be antithetical to the protected right not to procreate, as well as to the custom of widespread use of contraceptives, for courts to hold, as a matter of law, that no damage can result from an unwanted pregnancy where precautions were taken to avoid that pregnancy."
> Carroll, *Recovery for Wrongful Conception: Who Gets the Benefit—The Parents or the Public?*, 14(4) New England L.Rev., 784 (1979).

In *Sherlock v. Stillwater Clinic*, Minn., 260 N.W.2d 169 (1977), a case widely cited and followed on this subject, the Minnesota Supreme Court allowed recovery for the costs of raising a child following negligent performance of a tubal ligation. The court held that it would be "myopic" today to declare that the benefits of parenthood outweigh the costs as a matter of law.

In *Bowman v. Davis*, Ohio, 48 Ohio St.2d 41, 356 N.E.2d 496 (1976), at 499, the court states:

"The choice not to procreate, as part of one's right to privacy, has become (subject to certain limitations) a Constitutional guarantee. See *Griswold v. Connecticut* (1965), 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; and *Doe v. Bolton* (1973), 410 U.S. 179, 93 S.Ct. 755, 35 L.Ed.2d 147. For this court to endorse a policy that makes physicians liable for the foreseeable consequences of all negligently performed operations except those involving sterilization would constitute an impermissible infringement of a fundamental right."

The duty of this court is to follow public policy, not to formulate it. In *Maggard*, the Kentucky Court of Appeals formulated policy. It reasoned from the *absence* of "a clear expression of public policy (or) some indication from the legislature" to the conclusion "that our public policy prohibits the extension of liability to include these damages." My view is just the opposite; that public policy should not flow from the opinions and beliefs of judges, however well-meaning, absent "a clear expression of public opinion or some indication from the legislature."

> "It is elementary that the legislative branch of government has the prerogative of declaring public policy, and that the mere wisdom of its choice in that respect is not subject to the judgment of a court." *Fann v. McGuffey*, Ky., 534 S.W.2d 770, 779 (1975).

Public policy should not extend to making a judgment, as a matter of law, that persons have suffered no damages from the foreseeable consequences of a medical procedure, even though we judges may believe that the emotional benefits of parenting outweigh the economic consequences.

In *Ochs v. Borrelli*, Conn., 187 Conn. 253, 445 A.2d 883 (1982) at 885, the Supreme Court of Connecticut says:

> "In our view, the better rule is to allow parents to recover for the expenses of rearing an unplanned child to majority when the child's birth results from negligent medical care. The defendants ask

us to carve out an exception, grounded in public policy, to the normal duty of a tortfeasor to assume liability for all the damages that he has proximately caused . . . But public policy cannot support an exception to tort liability when the impact of such an exception would impair the exercise of a constitutionally protected right."

The issue in this case is not public policy, but a much narrower one: Is this court being called upon to create a new cause of action, or simply to recognize an old one? A cause of action in negligence is almost as old as the common law.

Historically, in an agricultural society and in the early days of the industrial revolution when child labor was the rule rather than the exception, children were recognized as an economic benefit. That once logical proposition has certainly become illogical in our modern society. Today, the cost of rearing a child is not only foreseeable, it is unavoidable, as a natural and probable consequence of the act of negligence which is alleged in this case. The damages that flow from a negligent act, that are reasonably foreseeable from negligent conduct, change over time. But this does not mean that recognizing the existence of these new consequences is creating a new cause of action.

The economic loss attendant to bearing and raising children in our time is as foreseeable and reasonably determinable as the economic loss from physical injury that causes impairment or destruction of earning power or the prospect of future medical expenses. As stated in *Sherlock, supra,* 260 N.W.2d at 174:

"Where the purpose of the physician's actions is to prevent conception or birth, elementary justice requires that he be held legally responsible for the consequences which have in fact occurred."

The "Opinion of the Court" in this case states that "the majority of decisions have concluded that parents who give birth to a normal healthy child are not entitled to their costs of raising the child from the physician." But movants cite us to "thir-teen cases from eleven states (which) have allowed damages to be recovered for the cost of raising the child," as against "ten cases from nine states" to the contrary. Thus, the greater weight of authority, and the better reasoning, supports refusing to create a different rule for one type of damages than for another, when both reasonably are foreseeable as a natural and probable consequence of the negligence alleged.

There is no parallel between the present case and the statutory cause of action for wrongful death. Wrongful death was a new cause of action, not existing at common law. "Wrongful life," meaning a cause of action for damages by or on behalf of the child (not the parents) claiming that the child was born into a disadvantageous life by reason of another's negligence, would be a new duty to a new person where none previously existed. But the right of the parents to recover for their costs in rearing their child is simply an additional element of expense where the duty and the persons to whom it is owed already exist. (For discussion of the difference, see Wilmoth, *Wrongful Life and Wrongful Birth Causes of Action—Suggestions for a Consistent Analysis,* 63 Marquette L.Rev. 611 (1980); Carroll, *Recovery for Wrongful Conception: Who Gets the Benefit—The Parents or the Public?, supra;* Annot., 83 ALR 3d 15, 19.) A child, regardless of circumstances, has no legal right to complain against being born. The circumstances of the child given life, and the parents given expense, are not corresponding.

This court has already recognized the existence of a cause of action for damages based upon an allegation of a negligent sterilization procedure. In *Hackworth v. Hart,* Ky., 474 S.W.2d 377 (1971), we reversed a directed verdict in favor of a physician alleged to have negligently performed a vasectomy and negligently failed to test thereafter as to whether sterility had been accomplished, deciding that the claim of negligence and damages should be submitted to the jury. Unfortunately that case is silent on the issue that presently confronts us: what elements of damages should be considered by the jury.

In *Nazareth Literary and Benevolent Inst. v. Stephenson*, Ky., 503 S.W.2d 177 (1973), the issue was whether this court should declare a public policy creating a privilege for the benefit of physicians against discovery of the records of peer review procedures conducted in the hospital. Reasons were advanced why such was necessary for the benefit of the medical profession and the general public. This court wrote, p. 179:

"Although this might be regarded as an initially appealing argument, on reflection, one might well debate wherein the public interest lies. Claims of privilege are carefully scrutinized, ... In any event, we find no applicable privilege expressed in either the general law of evidence existing in this state or in the statutes of this state expressing any protection of confidentiality in the situation presented."

The underlying philosophy that would restrain this court from constructing a rule limiting discovery to benefit the medical profession would apply with equal force to constructing a rule limiting damages to benefit the medical profession. It is for the legislature, not the court, to debate and decide if such a rule is necessary in the public interest.

Viewed simply as a negligence case, we cannot escape the conclusion that the negligent physician is liable for expenses reasonably foreseeable in connection with rearing the child. But for the same reason, because this is a negligence case, no recovery should be permitted on the claim for emotional and mental suffering in connection with rearing the child. Child *bearing* has elements of physical injury and physical pain to support the additional claim for mental suffering attendant thereto. Child *rearing* has no such physical injury upon which to base a claim for mental suffering or emotional distress.

It is a rule of longstanding in this jurisdiction that we do not permit damages for mental suffering unless accompanied by physical contact or injury; that such damages are presumably "too remote and specu-

lative." *Morgan v. Hightower's Adm'r.*, 291 Ky. 58, 163 S.W.2d 21 (1942). Although the scope of what should be considered as related to, and the direct and natural consequence of, physical contact or injury, has been expanded by *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980) and *Wilson v. Redken Laboratories, Inc.*, Ky., 562 S.W.2d 633 (1978), the rule has not been abandoned. Emotional distress, or psychic injury, must still bear some direct relationship to physical contact or injury. Concern for the "remote and speculative" nature of psychic injury is an insurmountable problem when the claim is for future emotional distress anticipated in connection with raising a child.

It follows that it is likewise inappropriate to consider permitting the defendant to set off potential emotional benefits. Who knows to whether the joys from rearing a child will outweigh the heartaches? We cannot offset the well recognized, foreseeable expenses of child rearing with the joy we can only hope for. We cannot disregard the parents' claim that they expect emotional distress from the disruption of their careful family planning, but allow the tortfeasor an offset for the bundle of joy he hopes to have contributed to their lives. Both the positive emotional benefit and the negative emotional detriment of child rearing are too speculative and conjectural, too subjective and personal, to fit within the parameters of the subject of damages.

Next we turn to the rather specious claim that the parents should be required to mitigate damages by abortion or adoption. We quote from *Troppi v. Scarf*, Mich.App., 31 Mich.App. 240, 187 N.W.2d 511 (1971):

"The doctrine which requires a plaintiff to take measures to minimize the financial consequences of a defendant's negligence requires only that reasonable measures be taken."

Both the best interest of the child, and the natural instincts of the parent, make it unreasonable to require parents to submit the child in the womb to abortion, or the child in the crib to adoption. The defendant has no right to insist that the victims of

his negligence have the emotional and mental makeup to abort or place the child for adoption. As stated in *Troppi,* 118 N.W.2d p. 520:

"While the reasonableness of a plaintiff's efforts to mitigate is ordinarily to be decided by the trier of fact, we are persuaded to rule, as a matter of law, that no mother, wed or unwed, can reasonably be required to abort (even if legal) or place her child for adoption.... (T)he jury may not, in computing the amount, if any, of the plaintiff's damages, take into consideration the fact that the plaintiffs might have aborted the child or placed the child for adoption."

In our world there are many businesses and professions whose negligent acts can cause great harm and damage. They are still held accountable in terms of civil liability. Airplanes loaded with passengers crash in midair. An overhanging walkway collapses to the floor of a crowded hotel lobby. A defective product, or a chemical spill, causes serious injury or death to a vast number of people. The continued availability of traditional tort remedies protect the victims in cases much more burdensome than the present one, and continue to provide incentive for reasonable care. We cannot absolve a physician of liability for the expense reasonably foreseeable for the cost of raising the child simply because it may be burdensome. To do so is to limit the action to a relatively insignificant portion of the damages caused by his negligence. The physician who undertakes to provide medical treatment in the form of sterilization should not be afforded immunity from the major consequences of his negligence.

I would reverse the summary judgment and permit recovery for the potential costs of rearing the child.

VANCE, Justice.

I concur in large measure with the dissent of Justice Leibson. We are not concerned here with any new cause of action. The cause of action alleged is negligence and, if it can be proved at trial, the victim of the negligence should be permitted to recover all damages that flow directly from the negligent acts.

I see no reason to exclude from recovery damages for mental suffering and anguish. It is true that ordinarily damages for mental suffering are not permitted unless accompanied by physical injury or contact. The extent of the physical contact necessary to sustain an award for mental suffering is minimal. *Deutsch v. Shein,* Ky., 597 S.W.2d 141 (1980).

In this case all of the damages spring directly from the alleged negligent performance of an operation upon a patient and from the negligent failure to conduct certain tests to assure that the operation had achieved its goal. There is certainly no lack of physical contact in the performance of the operation. If the claimants have suffered mental distress as a result of the alleged negligent conduct, they are entitled to be compensated therefor.

It follows that any amount of damages allowed to movants should be offset by the value of the benefits or enjoyment to them resulting from the birth of this child. They freely admit love and attachment for the child. Even though they did not want any additional children, they will receive some satisfaction, enjoyment, and enrichment of their lives because of the birth of this child. The majority is of the opinion that the benefits will clearly outweigh the economic burden.

I cannot make such a broad generalization applicable to every case. It seems clear to me that the birth of a child certainly entails some economic burden to the parents and in most cases will also bring pleasures and enjoyment. If we are to impose liability for damages upon a physician for the economic burden and mental distress to the parents which results from negligent acts of the physician, I see no reason not to offset those damages with the mental and emotional benefits which the parents will enjoy.

Admittedly, there is no precise scale by which a jury may measure these intangibles, but it should not be any more difficult

to place a monetary value upon emotional benefits than it is to place a monetary value upon emotional suffering, and that has long been allowed.