Sharon **DUTSCHKE**; Kenneth **Dutschke, Appellants,**

v.

JIM RUSSELL REALTORS, INC.; Jim Russell; Joseph Hines; Michael Faust, Personal Representative of the Estate of Fred Faust and Trustee of the Faust Family Trust, Appellees.

No. 2007–CA–001146–MR.

Court of Appeals of Kentucky.

Aug. 1, 2008.

Discretionary Review Denied by Supreme Court May 13, 2009.

Kirk Hoskins, Louisville, KY, for appellant.

Michael F. Lawrence, Louisville, KY, for appellee.

Before: COMBS, Chief Judge; KELLER, Judge; HENRY,[1] Senior Judge.

## OPINION

HENRY, Senior Judge.

Sharon Dutschke and Kenneth Dutschke appeal from the dismissal of their claims against the above captioned appellees in a dispute concerning the Dutschkes' purchase of a residence from Fred Faust, deceased. The real estate purchase contract contained an arbitration clause, which the circuit court determined was enforceable. The Dutschkes allege that the underlying contract was a product of fraud, and that to the extent that the Kentucky Uniform Arbitration Act contained in KRS Chapter 417 (KUAA) compels arbitration under such circumstances, the Act is unconstitutional under the jural rights doctrine, the right to a jury trial contained in Section 7 of the Kentucky Constitution, the separation of powers doctrine, and the prohibition against arbitrary power contained in Section 2 of the Kentucky Constitution, *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850 (Ky.2004), notwithstanding. For the reasons stated below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jim Russell is the owner of a real estate agency, Jim Russell Realtors, Inc., d/b/a Remax Elite Realty Office. Joseph Hines is one of the real estate agents employed at the agency.

In early 2002 Kenneth and Sharon decided to sell their farm in Breckinridge County, Kentucky, and relocate to the Shively area of Jefferson County, where Sharon had grown up.

In the course of searching for a residence in the area the Dutschkes were referred to Joseph Hines. They eventually retained Hines as their buyer's agent to help them search for a home. While looking through a listing magazine at the Remax office one day, Sharon noticed a promising listing for a residence located at 1828 Farnsley Road. The residence was owned by Fred Faust, who had had the dwelling built in 1950. Faust had earlier signed a contract engaging Remax Elite to handle the sale of the residence. As part of the process involved in selling the home, Faust completed a seller's disclosure statement. The parties dispute whether this statement was ever provided to the Dutschkes.[2]

The Dutschkes visited the home, inspected it, and noticed several needed re-

---

1. Senior Judge Michael L. Henry, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. The Arbitrator concluded that it was not.

pairs. As part of their negotiations, the Dutschkes prepared a list of needed repairs totaling $13,152.65 to be presented to Faust in an attempt to get him to lower the price. On June 15, 2002, Faust accepted the Dutschkes' offer to purchase the residence for $103,000.00. The Dutschkes did a final walk through on July 14, 2002, and the closing on the property occurred on July 18, 2002.

The Dutschkes' purchase of the property was consummated through the use of a standardized sales and purchase contract prepared by the Greater Louisville Association of Realtors, Inc. Paragraph 17 of the contract provides as follows:

17. BINDING ARBITRATION: All claims or disputes, for a sum greater than the limits of small claims court jurisdiction, of Sellers, Buyers, brokers, or agents or any of them arising out of this contract or the breach thereof or arising out of or relating to the physical condition of the property covered by this purchase agreement (including without limitation, claims of fraud, misrepresentation, warranty and negligence) shall be decided by binding arbitration in accordance with the rules of the real estate industry, then in effect, adopted by the American Arbitration Association unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing by registered or certified mail with the other parties to the contract and with a registered arbitrator (a list of which is available at the Greater Louisville Association of Realtors main office) or other arbitrators which the parties may agree upon and shall be made within one (1) year after the dispute has arisen. An actual oral hearing shall be held unless the parties mutually agree otherwise. The Kentucky Real Estate Commission still retains jurisdiction to determine violations of KRS 324.160. Any proceeding pursuant to KRS 324.420(1) to determine damages shall be conducted by an arbitrator pursuant to this clause and not in court. By signing below the agents, on behalf of themselves and their brokers, agree to be bound by this arbitration clause, but are not parties to this contract for any other purpose. The terms of this Paragraph 17 shall survive the closing.

Following the closing, among other problems, the Dutschkes experienced leaks in their basement following heavy rainfall; discovered that the plumbing in the upstairs bathroom was defective resulting in leaking behind the walls; determined that the basement plumbing was not hooked up to the municipal sewer system but, rather, was connected to a septic system; learned for the first time that the home was located in a flood plain; and discovered rotting around the windows.

Faust paid the Dutschkes for the expenses required to repair the basement leaking; however, based upon the perceived extensive lack of disclosure concerning the condition of the dwelling, on August 12, 2003, the Dutschkes filed a "Petition for Declaratory Relief and Civil Complaint" in Jefferson Circuit Court. As relevant here, the Complaint alleged that Remax Elite, Russell, Hines, and Faust had fraudulently induced the Dutschkes to purchase the Farnsley Road residence. The complaint did not, however, allege that the Dutschkes were fraudulently induced to enter into the arbitration agreement. At this time *Marks v. Bean*, 57 S.W.3d 303 (Ky.App.2001), was the controlling case in situations involving fraud and the enforceability of an arbitration clause. It held that an allegation of fraud in the inducement relating to the underlying contract alone was sufficient to avoid the enforcement of an arbitration clause.

On October 3, 2003, Remax, Russell, and Hines filed a motion to dismiss or, in the alternative, for enforcement of the arbitration clause contained in the purchase and sales agreement.[3] It appears, however, that the motion was never ruled upon. Discovery then proceeded, and a trial date was set for May 17, 2005.

In the meantime, the Supreme Court issued its decision in *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850 (Ky.2004). The decision, overruling *Marks v. Bean, supra*, held that a party to a contract containing an arbitration clause could not avoid arbitration where the alleged fraud was limited to fraudulent acts inducing the party to enter into the underlying contract alone; rather, avoidance could only be had when the allegations of fraud went to the making of the arbitration clause itself.

On the eve of the scheduled trial, based upon the holding in *Louisville Peterbilt*, the defendants renewed their motion to dismiss or, in the alternative, arbitrate. On May 18, 2005, the trial court entered an order granting the motion in the alternative. The matter accordingly proceeded to arbitration.

Following a hearing, the Arbitrator issued his Arbitrator's Opinion and Award, which was filed into the circuit court record on October 21, 2005. The Arbitrator substantially agreed with the Dutschkes upon their claims relating to undisclosed defects, but awarded them only $12,691.00 out of the total of $41,600.00 they sought.

On February 21, 2006, the Dutschkes filed a motion to vacate the arbitration award on the basis that the award was grossly inadequate. They also argued that the Arbitrator erred by failing to rescind the contract altogether. The defendants responded, and in the Dutschkes' reply memorandum they raised the constitutional arguments at issue herein. Notice was provided to the Attorney General concerning their constitutional challenges to the KUAA, who on May 22, 2006, filed a notice that he would not intervene in the Dutschkes' challenge to the constitutionality of aspects of the KUAA.

On October 23, 2006, Fred Faust passed away and his estate was substituted as a party to the case.

On May 8, 2007, the trial court entered an order denying the Dutschkes' motion to vacate the arbitration award and, instead, confirming the award. This appeal followed.

## DISCUSSION

■ In *Louisville Peterbilt*, in overruling *Marks v. Bean*, the Supreme Court interpreted the "savings clause" contained in KRS 417.050[4] consistent with the U.S. Supreme Court's interpretation of analogous language contained in the Federal Arbitration Act (FAA) as enunciated in *Prima Paint Corporation v. Flood & Conklin Manufacturing Company*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). This interpretation is referred to as the "separability doctrine," and, in summary, requires courts to separate an otherwise valid arbitration clause from the contract within which it is contained to allow arbitration of all claims not going to the validity of the arbitration clause itself.

---

3. Because the Complaint alleged fraud in the inducement regarding the underlying contract, pursuant to *Marks v. Bean, supra.*, the clause would not have been enforced.

4. KRS 417.050 provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, *save upon such grounds as exist at law for the revocation of any contract.*" (Emphasis added).

In other words, under the holding in *Louisville Peterbilt,* fraudulent acts inducing someone to enter into the underlying contract is not a basis for avoiding the arbitration clause; rather, to avoid the clause upon the basis of fraud, the fraudulent inducement must relate specifically to the arbitration clause. The underlying notion is that the Arbitrator himself is capable of evaluating and issuing a ruling upon allegations relating to fraud in the inducement vis-à-vis the underlying contract.

Upon examination, it is the above holding in *Louisville Peterbilt* which underlies the Dutschkes' constitutional challenge. Pursuant to their constitutional theories, they contend that their claim that they were fraudulently induced to enter into the underlying contract itself should suffice to challenge the arbitration clause, which mirrors the holding in *Marks v. Bean.* Thus, they argue that we should, in effect, abrogate the Supreme Court's holding in *Louisville Peterbilt* pursuant to their constitutional theories.

Though the Supreme Court did not address the constitutional issues as raised by the Dutschkes in its *Louisville Peterbilt* decision, we have grave doubts that we may rule in accordance with the Dutschkes' constitutional arguments. "The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court." Rules of the Kentucky Supreme Court (SCR) 1.030(8)(a). "[A]s an intermediate appellate court, this Court is bound by established precedents of the Kentucky Supreme Court." *Smith v. Vilvarajah,* 57 S.W.3d 839, 841 (Ky.App. 2000) (citations omitted).

Nevertheless, we will briefly address the Dutschkes' constitutional arguments.

## JURAL RIGHTS DOCTRINE

In their brief the Dutschkes purport to challenge the constitutionality of Chapter 417 under the jural rights doctrine. They have headings in their brief reflecting this, and they state "Post [*Louisville Peterbilt* ], KRS 417.050 eliminates the rights of trial by jury in a common law fraud claim, a facial violation of the Dutschkes' jural rights." Appellant's Brief, pg. 16. However, an examination of their arguments under what they identify as their jural rights doctrine headings discloses that it appears they are interchanging the term "jural rights" with the right to a jury trial contained in Section 7 of the Kentucky Constitution. Indeed, they state that the "[a]pplication of jural rights principles begins with Section 7." Appellant's Brief, pg. 15.

We believe the Dutschkes' use of the term "jural rights" in their arguments to be a misnomer. Section 7 is not an aspect of the jural rights doctrine in Kentucky as used in its normal sense. Nevertheless, we will briefly address the constitutionality of Chapter 417 under the jural rights doctrine. We examine the constitutionality of the Act under Section 7—which appears to be the actual thrust of the Dutschkes' argument—in the next section of this opinion.

The jural rights doctrine is not expressly set out in the Kentucky Constitution. Rather, the doctrine is derived from a reading of Sections 14,[5] 54,[6] and 241 [7] of

---

**5.** Section 14 provides "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

**6.** Section 54 provides "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

**7.** Section 241 provides "Whenever the death of a person shall result from an injury inflict-

the Kentucky Constitution. In essence, the doctrine states that the General Assembly has no authority to abolish or restrict a common law right of recovery for personal injury or wrongful death. *Bishop v. Manpower, Inc. of Cent. Kentucky,* 211 S.W.3d 71 (Ky.App.2006); *Williams v. Wilson,* 972 S.W.2d 260, 265 (Ky.1998); *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932). The doctrine has also been articulated as "preclud[ing] any legislation that impairs a right of action in negligence that was recognized at common law prior to the adoption of the 1891 Constitution." *McDowell v. Jackson Energy RECC,* 84 S.W.3d 71, 73 (Ky.2002); *see also* Thomas P. Lewis, *Jural Rights Under Kentucky's Constitution: Realities Grounded in Myth,* 80 Ky.Law J. 953 (1992).

■ In summary, the jural rights doctrine is limited to application in the areas of negligence, personal injury, or wrongful death. As fraud in the inducement does not fall within any of those categories, we believe the jural rights doctrine to have no application to the issues under consideration.

### RIGHT TO JURY TRIAL

■ The Dutschkes contend that Chapter 417 violates Section 7 of the Kentucky Constitution by denying them their right to a trial by jury upon their claim that they were fraudulently induced into entering the subject real estate contract.

Section 7 of the Kentucky Constitution provides, "The ancient mode of trial by

jury shall be held sacred, and the right thereof remain inviolate, *subject to such modifications as may be authorized by this Constitution.*" (Emphasis added). Thus, the Section contemplates that there may be other provisions in the Constitution which may make exceptions to the general rule that a citizen is entitled to a trial by jury. One of these exceptions is contained in Section 250 of the Constitution, which provides that "[i]t shall be the duty of the General Assembly to enact such laws as shall be necessary and proper to decide differences by arbitrators, the arbitrators to be appointed by the parties who may choose that summary mode of adjustment." [8]

We believe Section 250 to be dispositive of the issue. The Section specifically provides for a system of arbitration to be enacted by the legislature and, by definition, arbitration does not include a trial by jury. Moreover, *Louisville Peterbilt* holds that arbitration is a proper forum in which to invoke a claim that the underlying contract is a product of fraud. Accordingly, we disagree with the Dutschkes' contention that the KUAA violates Section 7 of the Kentucky Constitution.

### SEPARATION OF POWERS

■ The Dutschkes contend that Chapter 417 violates the separation of powers doctrine contained in Section 28 of the Kentucky Constitution. Their argument is somewhat difficult to follow, but it appears that they allege that the legislature

---

ed by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom be-

long; and until such provision is made, the same shall form part of the personal estate of the deceased person."

8. Similar provisions were contained in Article VI, Section 10, of Kentucky's Second Constitution adopted in 1799, and in Article 8, Section 10, of Kentucky's Third Constitution adopted in 1850.

usurped powers vested in the judicial branch of government by drafting the KUAA in a manner which does not provide for judicial review of whether a party who enters into a contract containing an arbitration clause freely, knowingly, and voluntarily waived his Section 7 right to a jury trial.

The separation of powers doctrine is reflected in the Kentucky Constitution in Sections 27 and 28. The Kentucky Constitution Section 27 states:

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Kentucky Constitution Section 28 states:

> No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

We first note that, as previously discussed, Section 250 of the Kentucky Constitution specifically vests the legislature with the power to enact necessary and proper laws to establish an arbitration system in Kentucky. It follows that it was not a violation of the separation of powers doctrine for the legislature to enact the KUAA.

However, analogizing to a standard often used in the waiver of constitutional rights in criminal cases, the Dutschkes contend that the standard which should be applied in evaluating the validity of an arbitration clause is "an affirmative demonstration that the contract was freely, knowingly, and voluntarily entered into[.]"

The relevant standard concerning the validity of an arbitration clause has previously been established as follows: "[t]he burden of establishing the existence of an arbitration agreement that conforms to statutory requirements rests with the party seeking to enforce it, but once prima facie evidence thereof has been presented, the statutory presumption of its validity (KRS 417.050) accrues, and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement, *Marciniak v. Amid,* 162 Mich.App. 71, 412 N.W.2d 248 (1987), and this is a heavy burden." *Valley Const. Co., Inc. v. Perry Host Management Co., Inc.,* 796 S.W.2d 365, 368 (Ky. App.1990) (citing *Rancho Pescado, Inc. v. Northwestern Mutual Life Ins. Co.,* 140 Ariz. 174, 680 P.2d 1235 (1984) and *Board of Education, Taos Municipal Schools. v. The Architects, Taos,* 103 N.M. 462, 709 P.2d 184 (1985)). This standard was reaffirmed in *Louisville Peterbilt. Id.* at 857.

We are unpersuaded that in order for a party to be bound by an arbitration clause that his acquiescence to the agreement must be proven under the same standards applicable to a defendant's waiver of a constitutional right in a criminal case. In any event, the Supreme Court reaffirmed the above standard in *Louisville Peterbilt,* and we are bound by its holding upon the issue.

### SECTION 2

Finally, the Dutschkes contend that the KUAA violates Section 2 of the Kentucky Constitution in that it fails to provide for meaningful judicial review of an arbitration decision. They cite to the holding in *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964), to the effect that there is an inherent right of appeal

from orders of administrative agencies where constitutional rights are involved. Analogizing to this holding, they maintain that "[i]n granting favored status to an alternate system for dispute resolution the legislature must provide for judicial review unless the right is waived."

Section 2 of the Kentucky Constitution provides "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

Contrary to the appellant's assertion, KRS Chapter 417 does provide for judicial review. KRS 417.160 provides as follows:

(1) Upon application of a party, the court shall vacate an award where:

(a) The award was procured by corruption, fraud or other undue means;

(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(c) The arbitrators exceeded their powers;

(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of KRS 417.090, as to prejudice substantially the rights of a party; or

(e) There was no arbitration agreement and the issue was not adversely determined in proceedings under KRS 417.060 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court is not ground for vacating or refusing to confirm the award.

(2) An application under this section shall be made within ninety (90) days after delivery of a copy of the award to the applicant; except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety (90) days after such grounds are known or should have been known.

(3) In vacating the award on grounds other than stated in paragraph (a) of subsection (1) of this section, the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with KRS 417.070, or, if the award is vacated on grounds set forth in paragraphs (c) and (d) of subsection (1) of this section, the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with KRS 417.070. The time within which the agreement requires the award to be made is applicable to the rehearing and commences on the date of the order.

(4) If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.

Further, KRS 417.170 provides as follows:

(1) Upon application made within ninety (90) days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(b) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(c) The award is imperfect in a matter of form, not affecting the merits of the controversy.

(2) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.

(3) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

Thus, we disagree with the appellants that the KUAA does not provide for judicial review. We believe the level of judicial review provided is consistent with the underlying purposes of arbitration generally, one of which is to avoid the time and expense involved with courtroom litigation; is authorized by Section 250 of the Constitution; and, moreover, is sufficient to comply with the requirements of Section 2 of the Constitution.

## CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

KELLER, Judge, Concurs.

COMBS, Chief Judge, Concurs and Files Separate Opinion.

COMBS, Chief Judge, Concurring:

It is my profound wish that the General Assembly would re-visit the issue of arbitration in Kentucky. I hope that it would defer to the common law, common sense notion that fraud in the inducement to enter into a contract should not be tolerated—much less rewarded—in allowing the fraudulent actor to escape the scrutiny of the courts by recourse to arbitration. Until the General Assembly decrees otherwise, arbitration has effectively usurped and supplanted the constitutional guarantee of access to the courts under grossly unfair circumstances.

In light of *Peterbilt*, I must concur with the correctly reasoned majority opinion. I do so, however, with deep regret tempered with the hope that this lamentable state of affairs may attract the attention of our legislature.