RENDERED: APRIL 26, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0148-MR

DIANE WHITE
APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JEFFREY A. TAYLOR, JUDGE
ACTION NO. 21-CI-01945

BAPTIST HEALTHCARE SYSTEM,
INC., D/B/A BAPTIST HEALTH
LEXINGTON, F/K/A CENTRAL
BAPTIST HOSPITAL AND
PANAYIOTIS MICHAEL ZAVOS
APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, KAREM, AND McNEILL, JUDGES.

GOODWINE, JUDGE: Diane White ("White") appeals the January 5, 2023

judgment of the Fayette Circuit Court dismissing her claims and granting summary

judgment in favor of Panayiotis Michael Zavos ("Zavos") and Baptist Healthcare

System, Inc. d/b/a Baptist Health Lexington f/k/a Central Baptist Hospital ("Baptist"). We affirm, in part; reverse, in part; and remand.

## BACKGROUND

In 1988, White wished to have a child through artificial insemination. She sought the services of Zavos, a physiologist operating out of a Baptist hospital, to obtain donor sperm. She requested a donor with features like hers, specifically blond hair and blue eyes. Zavos told her he would obtain sperm from an anonymous donor he claimed was a 24-year-old medical student with the requested features. White recalls signing a written contract with these terms. Zavos twice provided sperm to White who then sought artificial insemination services from her gynecologist. White paid $500 each time. The first insemination failed but the second was successful.

In October 1989, White gave birth to a daughter with dark hair and olive skin. She contacted Zavos soon after the birth to inquire about the donor's medical history. Zavos told her the donor had no medical issues. White did not investigate the identity of the donor at that time.

In 2018, White's daughter took a commercially available DNA test. The results indicated she had no Nordic heritage and some of her relatives had the surname Zavos, raising White's suspicions about the identity of the donor. White then sought counsel who hired an investigator who retrieved discarded items

allegedly belonging to Zavos. Those items were tested for DNA and the results indicated Zavos was White's daughter's biological father.[1] On this basis, White alleges she became aware of her daughter's paternity and, therefore, Zavos' actions in 2020.

On June 29, 2021, White filed suit against Zavos and Baptist. She claimed (1) breach of contract; (2) fraud; (3) violation of the Kentucky Consumer Protection Act ("KCPA");[2] (4) battery;[3] and (5) practice of medicine without a license. Regarding Baptist's liability, she claimed Zavos acted as an agent of Baptist and that Baptist should have known of Zavos' conduct. On October 5, 2021, Baptist filed a motion for summary judgment on White's claims. On November 1, 2021, Zavos moved to dismiss White's claims. On November 30, 2021, Baptist also filed a motion to dismiss.

---

[1] The DNA test submitted by White identifies the "alleged father" as "Ken." White has provided no explanation for the use of a pseudonym. The results indicate the probability of paternity is >99.9999%.

[2] White claims Zavos' actions were unlawful under Kentucky Revised Statutes ("KRS") 367.170(1) and bases her claim on KRS 367.220(1), which states, in part:

> Any person who purchases or leases goods or services primarily
> for personal, family or household purposes and thereby suffers any
> ascertainable loss of money or property, real or personal, as a
> result of the use or employment by another person of a method, act
> or practice declared unlawful by KRS 367.170, may bring an
> action[.]

[3] White brought her battery claim against only Zavos.

On January 5, 2023, relying on the Supreme Court of Kentucky's decisions in *Grubbs ex rel. Grubbs v. Barbourville Family Health Center*, 120 S.W.3d 682 (Ky. 2003) and *Schork v. Huber*, 648 S.W.2d 861 (Ky. 1983), the circuit court dismissed White's claims, finding that Kentucky law does not permit wrongful conception or birth claims and "does not permit parents to recover compensable damages because their child's physical features are not as they desired." Record ("R.") at 567. The court further found that, without proof of the existence of a written contract, White's breach of contract claim could not survive. The court also found her fraud, battery, and Kentucky Consumer Protection Act claims were time-barred. Finally, the court found it was without jurisdiction to decide White's claim that Zavos practiced medicine without a license because she did not first exhaust all administrative remedies.

This appeal followed.

## STANDARD OF REVIEW

We review dismissals under CR[4] 12.02(f) *de novo*. *Shaw v. Handy*, 588 S.W.3d 459, 461 (Ky. App. 2019) (citation omitted). We must accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* (citation omitted). We must decide, based on the complaint, if there is

---

[4] Kentucky Rules of Civil Procedure.

any set of facts which may be proven under which the plaintiff would be entitled to relief. *Id.* (citation omitted).

We also review summary judgments *de novo*. Summary judgment is proper when

> [t]he record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the [denial] of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (internal quotation marks and citations omitted).

## ANALYSIS

On appeal, White argues (1) the circuit court improperly dismissed her claims as wrongful birth and/or wrongful conception claims; (2) Baptist is liable under the theories of negligent supervision and respondeat superior; (3) equitable estoppel prevents the applicable statutes of limitation from barring her claims; (4) the statute of repose for fraud, KRS 413.130(3), is unconstitutional; (5) the existence of a written contract prevents application of KRS 304.40-300; and (6)

because Zavos was not licensed by the Kentucky Board of Medical Licensure ("KBML"), she was not required to exhaust administrative remedies.

First, the circuit court incorrectly characterized White's entire complaint as an action for wrongful conception and/or birth. The court's reliance on *Grubbs* and *Schork* to dismiss her case is misplaced. In *Schork*, 648 S.W.2d at 863, the Supreme Court of Kentucky held, where a pregnancy resulted from a failed sterilization procedure, "parents cannot recover damages based on the cost of raising a child from a physician for his alleged negligence." In *Grubbs*, 120 S.W.3d at 685, parents alleged they were deprived of the opportunity to make informed decisions about whether the continue their pregnancies because physicians failed to diagnose and inform them of profound, incurable birth defects. The Court analyzed the plaintiffs' claims under traditional negligence principles, concluding they were unable to prove their claims because the existence of human life is not a legally cognizable injury. *Id*. at 689; *see also Schork*, 648 S.W.2d at 862 (holding "a child can be considered as an injury offends fundamental concepts attached to human life").

In her amended complaint, White alleges she

has been monetarily damaged by Dr. Zavos's and Baptist Health's conduct, in that she paid fees for the medical services she thought she was receiving, when in fact, she did not receive the medical services for which she had contracted, which included the fertilization of her egg or eggs by a medical student, not by Dr. Zavos, a fact which

Baptist Health either knew or should have known. **Additionally, she provided a home and financial support for her child during her minority**.

R. at 37 (emphasis added). In both *Schork* and *Grubbs*, the parents sought to recover costs of raising their children. The Supreme Court has deemed such damages speculative and remote. *Schork*, 648 S.W.2d at 862. Even where the parents did not seek to recover the entirety of the cost of raising the child, but only the costs for the necessary expenses, care, and treatment attributable to the child's birth defects, the Court characterized such damages as a claim for wrongful birth. *Grubbs*, 120 S.W.3d at 691 (citation omitted). Following the Supreme Court's reasoning, White cannot recover the costs of raising her child because this would amount to a claim for wrongful birth and/or conception.

White's remaining claims are otherwise distinguishable from *Schork* and *Grubbs* because White alleges distinct damages. In *Grubbs*, 120 S.W.3d at 691, the Court allowed the parents' breach of contract claim to proceed where they alleged the physician did not correctly perform diagnostic prenatal testing. The Court reasoned

> [w]e do not believe physicians should be relieved of any proven contractual responsibility to report to patients the accurate results of diagnostic procedures, even if the condition is "incurable." In the absence of such a conclusion, we would be forced to hold that physicians could perform and charge for diagnostic procedures and report whatever they want if the diagnosis is of an

incurable condition, and physicians could legally charge and be paid for services they did not perform.

*Id*. Here, White claims breach of contract, fraud, battery, violation of the KCPA, and unlawful practice of medicine without a license. Unlike the medical negligence claims involved in *Schork* and *Grubbs*, White claims injuries resulting from Zavos' intentional act of providing her with his own sperm after promising to obtain sperm from an agreed upon donor. Her claims exist independent of her pregnancy and the birth of her child. Were we to hold that the birth of a healthy child invalidates her claims, we would essentially be permitting the alleged intentional and fraudulent conduct. Just as the Court in *Grubbs* refused to relieve the physicians of their contractual obligations, we refuse to allow these defendants to escape liability under this theory.[5]

Next, we will address White's allegation that Baptist is liable for fraud, the practice of medicine without a license, breach of contract, and violation of the KCPA under the theories of negligent supervision and respondeat superior. Both of White's claims are predicated on her assertion that Zavos was an agent of

---

[5] In both *Schork* and *Grubbs*, the Supreme Court discusses the authority of the General Assembly to create new causes of action. We note the General Assembly did so in 2022 when it enacted a fraudulent assisted reproduction statute. Therein, "[a] person is guilty of fraudulent assisted reproduction when he or she is a health care provider performing an assisted reproduction procedure on a patient and . . . intentionally causes the use of his or her own human reproductive material without the patient's knowledge and written consent." KRS 311.373(2)(b). After this statute was enacted, White did not request to amend her complaint to include a claim under this statute.

-8-

Baptist. Although Baptist does not concede this issue, it argues "[e]ven if Ms. White could prove that an agency relationship existed between Zavos and Baptist during the relevant period, it would have no bearing on the legal determinations before this Court." Baptist's Brief at 23. We disagree.

White argues Zavos was an ostensible agent of Baptist. "An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Sneed v. University of Louisville Hospital*, 600 S.W.3d 221, 232 (Ky. 2020) (citation omitted). The principal is subject to liability for the actions of its ostensible agent where a third party relies on the agent's apparent authority. *Id*. (citation omitted). In the context of medical care, "it is unreasonable to put a duty on the patient to inquire of each person who treats him whether he is an employee or independent contractor of the hospital." *Id*. (citation omitted). At a minimum, a hospital must attempt to alert patients of whether someone is a hospital employee. *Id*. at 233.

Here, the parties agree Zavos was not a licensed physician, but a physiologist. However, White alleges he operated a laboratory in the Baptist hospital facility and met with Baptist patients in an office therein. White relies on evidence presented in *Zavos v. Thompson*, Fayette Circuit case No. 95-CI-00245, wherein Zavos testified he entered into a contract with Baptist to provide services.

-9-

He further testified that he saw "all patients at [Baptist]" and created patient files for Baptist. He attested to splitting his fees with Baptist. In the same proceedings, Baptist's Senior Vice President for Patient Care Services testified "[a]ny time you come to have services [at Baptist], you are a patient there." White alleges she understood Zavos to be an employee and/or agent of Baptist and neither Zavos or Baptist attempted to inform her otherwise.

On appeal, Baptist does nothing to refute these alleged facts. Considering this failure, viewing the evidence in the light most favorable to White, and resolving all doubts in her favor, there remains a genuine issue of material fact as to agency.

A plaintiff may pursue claims of negligent supervision and respondeat superior in the same action. *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 337 (Ky. 2014). The two theories are distinguishable because "'respondeat superior' is based upon the employer/employee relationship and imposes strict liability, whereas claims of negligent [supervision] focus on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 6 (Ky. App. 2018) (citation omitted).

First, White alleges Baptist is liable for negligent supervision of Zavos. Her claim is based on the following allegations in her amended complaint:

> 51. Baptist Health either knew or should have known that
> Dr. Zavos used his own sperm to fertilize her eggs; if it

did not know this fact, its lack of knowledge is because it did not have in place a proper protocol or procedure for the identification of sperm collected on its premises, and to regulate the use of that sperm.

52. Because Baptist Health materially assisted Dr. Zavos in his fraudulent and unlawful conduct toward her, it is jointly and severally liable to her for that conduct.

R. at 35-36.

A defendant may be held liable for harm resulting from its own negligent supervision of its agent. *Allgeier*, 433 S.W.3d at 336 (citation omitted). However, the defendant may only be held liable where it "knew or had reason to know of the risk that the employment created." *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. App. 2013) (citations omitted). White relies on the *Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989), wherein the Supreme Court of Kentucky cites to *Restatement (Second) of Agency*, Section 213 (2024), which states "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in giving improper or ambiguous orders [or] in failing to make proper regulations[.]" However, *Comment c* to Section 213 explains, "the directions may be negligent because the principal does not anticipate circumstances which he should realize are likely to arise." White fails to show Baptist had reason to know that Zavos' use of his own sperm in place of that of anonymous donors. Without any explanation of why Baptist should have known of this risk, we cannot find any conceivable basis

-11-

on which White's claim of negligent supervision could succeed. *Carberry*, 402 S.W.3d at 564.

White further argues Baptist is liable for Zavos' conduct under the doctrine of respondeat superior.

> [T]he doctrine of respondeat superior, is not predicated upon a tortious act of the employer but upon the imputation to the employer of a tortious act of the employee by considerations of public policy and the necessity for holding a responsible person liable for the acts done by others in the prosecution of his business, as well as for placing on employers an incentive to hire only careful employees.

*Disabled American Veterans, Dep't of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541, 555 (Ky. App. 2005) (internal quotation marks and footnote omitted). "[A]n employer's liability is limited only to those employee actions committed in the scope of employment." *Patterson v. Blair*, 172 S.W.3d 361, 366 (Ky. 2005). An employer may be held liable for an intentional tort committed by an employee "where its purpose, however misguided, is wholly or in part to further the [employer's] business." *Id.* at 369 (citation omitted). If an employee "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." *Id.* (citation omitted). An employer may be held liable for even "unprovoked, highly unusual, and quite outrageous" acts by an employee. *Id.* at 371 (citation omitted).

Here, White alleges Baptist is liable for Zavos' intentional acts of breach of contract, fraud, violations of the KCPA, and the practice of medicine without a license. To prove liability, she alleges Zavos acted to further Baptist's interests by providing sperm to patients for a fee. Based on Zavos' testimony in the 1995 case, Baptist received half of the fees for his services. White claims Zavos furthered Baptist's pecuniary interests by providing her with his own sperm in exchange for the fee. Although Zavos' conduct can easily be categorized as highly unusual and outrageous, this is not determinative of Baptist's liability. Because we have previously determined there is sufficient proof that Zavos was acting as an agent of Baptist during the relevant time, the circuit court did not address Baptist's liability, and discovery was limited, it is possible White could prevail at trial.[6] Therefore, summary judgment is unwarranted.

---

[6] The parties conducted minimal discovery during the pendency of this action. In October 2021, White served Baptist and Zavos with requests for admissions, interrogatories, and requests for production of documents. Thereafter, both defendants moved for protective orders holding White's discovery requests in abeyance until the trial court ruled on Baptist's motion for summary judgment. The motions remained pending, halting discovery, until entry of the court's January 5, 2022 judgment.

Next, equitable estoppel makes the relevant statutes of limitation inapplicable to White's claims of breach of contract,[7] fraud,[8] battery,[9] and violations of the KCPA.[10] Equitable estoppel prevents a defendant from invoking a statute of limitations as a defense because of his own wrongdoing. *Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020) (citation omitted). Where a defendant has acted "with a full knowledge of the facts with reference to a particular right or title, induced another, in reliance upon such course of conduct, to act to his detriment," he cannot later benefit from his own wrongdoing. *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 506 (Ky. App. 2005) (footnote omitted).

> The essential elements of equitable estoppel are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party

---

[7] An action for breach of a written contract "shall be commenced within fifteen (15) years after the cause of action first accrued[.]" KRS 413.090(2).

[8] Actions for relief or damages for fraud or mistake "shall be commenced within five (5) years after the cause of action accrued[.]" KRS 413.120(11).

[9] "An action for an injury to the person of the plaintiff" must "be commenced within one (1) year after the cause of action accrued[.]" KRS 413.140(1)(a).

[10] "Any person bringing an action under this section must bring such action within one (1) year after any action of the Attorney General has been terminated or within two (2) years after the violation of KRS 367.170, whichever is later." KRS 367.220(5).

-14-

> claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Williams*, 594 S.W.3d at 196 (citation omitted).

Zavos misrepresented the sperm he provided to White as that of a 24-year-old medical student when he had to know it was actually his own sperm. When he gave White the sperm without telling her it was not from the agreed upon donor, he intended for her to rely on that information and use the sperm for artificial insemination. He knew the origin of the sperm but never informed White of that fact. Conversely, White did not have knowledge of Zavos' deception. She relied on Zavos' assurances that the donor would be a 24-year-old medical student. Practically speaking, she had no means for ascertaining the truth. Both Baptist and Zavos argue White should have investigated her daughter's paternity soon after she was born because she had dark hair and olive complexion. However, due to the anonymous nature of sperm donation, it appears there was no reasonable way White could have investigated her child's paternity in 1989. She did not discover her child's paternity and, therefore, Zavos' harmful conduct, until an investigator obtained the items from Zavos and tested them for DNA in 2020. Therefore, equitable estoppel prevents invocation of the relevant statutes of limitation.

-15-

Next, White challenges the constitutionality of the statute of repose for claims of fraud or mistake.[11]  Causes of action for fraud must "be commenced within five (5) years after the cause of action accrued[.]"  KRS 413.120(11).  The discovery rule is "a means by which to identify the 'accrual' of a cause of action when an injury is not readily ascertainable or discoverable[.]"  *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (citation omitted).  Under the rule, a cause of action does not accrue "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct."  *Id.* (citation omitted).  As stated above, White's claim did not accrue until she received the DNA results identifying Zavos as her child's biological father in 2020.

However,

[i]n an action for relief or damages for fraud or mistake, referred to in subsection (11) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake.  However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud.

KRS 413.130(3).  Baptist and Zavos claim White's claim is time-barred even if it did not accrue until 2020.  They argue she was required to commence the action no

---

[11] As required by KRS 418.075, White served the Kentucky Attorney General with her notice of appeal and briefs.  She also served the Attorney General with her response to Baptist's motion for summary judgment wherein she first raised this argument.  CR 24.03.  The Attorney General has declined to respond to this challenge.

later than 1999, ten years after her transactions with Zavos. White claims KRS 413.130(3) is an unconstitutional statute of repose. "Statutes of limitations limit the time in which a plaintiff may bring suit *after a cause of action accrues*, whereas statutes of repose potentially bar the plaintiff's suit *before the cause of action arises*." *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 18 (Ky. 1990) (citation omitted). The portion of KRS 413.130(3) which requires an action to be "commenced within ten (10) years after the time of making the contract or the perpetration of the fraud" is a statute of repose because it is possible that an injury may not be discovered before the expiration of this period, meaning "the cause of action would be destroyed before it legally existed." *McCollum*, 799 S.W.2d at 18.

White argues KRS 413.130(3) unconstitutionally violates the "open courts" provisions, also known as the jural rights doctrine, of the Kentucky Constitution. The open courts doctrine is judicially derived from Sections 14,[12] 54,[13] and 241[14] of the Kentucky Constitution. *See Ludwig v. Johnson*, 49 S.W.2d

---

[12] "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[13] "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

[14] "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to

347, 351 (Ky. 1932); *see also Taylor v. King*, 345 S.W.3d 237, 242 (Ky. App. 2010). "[T]he doctrine states that the General Assembly has no authority to abolish or restrict a common law right of recovery for personal injury or wrongful death." *Dutschke v. Jim Russell Realtors, Inc.*, 281 S.W.3d 817, 823 (Ky. App. 2008) (citations omitted). The doctrine has also been found to preclude legislation restricting "a right of action in negligence that was recognized at common law prior to the adoption of the 1891 Constitution." *Id.* (citations omitted).

White relies on *McCollum* in support of her argument. Therein, appellants challenged the five-year statute of repose for medical malpractice claims contained in KRS 413.140(2) as an unconstitutional violation of the open courts doctrine. *McCollum*, 799 S.W.2d at 16. The Supreme Court found the statute unconstitutional because claims for medical malpractice existed at common law prior to the adoption of the 1891 Constitution. *Id.* at 18-19. "[T]he legislature may not abolish an existing common-law right of action for personal injuries or wrongful death caused by negligence." *Id.* at 19 (citing *Saylor v. Hall*, 497 S.W.2d 218, 224 (Ky. 1973)). White erroneously argues the same reasoning should be applied to KRS 413.130(3).

---

recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person."

It is true that fraud existed as a common law claim prior to 1891. *See, e.g.*, *Hardwick v. Forbes' Administrator*, 4 Ky. 212 (Ky. 1808); *see also Rutledge v. Lawrence*, 8 Ky. 396 (Ky. 1818); *see also Robinson v. Gilbreth*, 7 Ky. 183 (Ky. 1815). However, the open courts doctrine does not apply to such claims. In *Dutschke*, the appellants claimed KRS 417.050 was an unconstitutional violation of the doctrine. 281 S.W.3d at 822 (citation omitted). The Court rejected this argument because claims for fraud in the inducement fall outside the areas to which the doctrine applies – negligence, personal injury, and wrongful death. *Id.* at 823. On the same grounds, the open courts doctrine is not applicable to common law fraud claims, although such claims preexisted the Kentucky Constitution. Therefore, KRS 413.130(3) is constitutional, and, under it, White's fraud claim is time-barred.[15]

Next, there is sufficient evidence of the existence of a written contract for White's breach of contract claim to survive summary judgment.

> No malpractice liability shall be imposed upon any health care provider on the basis of an alleged breach of any guaranty, warranty, contract or assurance of results to be obtained from any procedure undertaken in the course of providing health care, unless such guaranty, warranty,

---

[15] Alternatively, White argues KRS 413.130(3) is an affirmative defense which Baptist waived by failing to plead it in its answer. However, statutes of repose are not affirmative defenses which can be waived. *Hieneman v. Wooten*, No. 2021-CA-1081-MR, 2024 WL 648704, *4 (Ky. App. Feb. 16, 2024) (citation omitted); *see also Roskam Baking Co., Inc. v. Lanham Mach. Co.*, 288 F.3d 895, 902-03 (6th Cir. 2002).

> contract or assurance is in writing and signed by the provider.

KRS 304.40-300.[16] Where a written contract is required, the plaintiff must prove the existence of such a writing so that its terms can be ascertained. *See Mills v. McGaffee*, 254 S.W.2d 716, 717 (Ky. 1953) (citation omitted).

Summary judgment should only be granted "if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010) (citation omitted). Impossible "is meant to be used in a practical sense, not in an absolute sense." *Id*. (citation omitted). Furthermore, summary judgment may only be granted "after a party has been given ample opportunity to complete discovery[.]" *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) (citation omitted).

White has not produced a written contract between herself and either Zavos or Baptist. Both defendants contest the existence of such contracts. White asserts that she entered into a written contract with Zavos. In support of this claim, she cites to her answers to Baptist's request for admissions in which she stated that she entered into a contract with Zavos and she "recall[ed] that the agreement was

---

[16] On appeal, White does not contest the applicability of this statute to her claim.

-20-

in writing." R. at 143. Although White has not produced the written contract, neither defendant claims White was not a Baptist patient. Instead, both appear to accept she was a patient, sought Zavos' services, received donor sperm, was artificially inseminated by a physician at a Baptist facility, and gave birth to a child as a result of the procedure. These facts are affirmative evidence showing that there remains a genuine issue of material fact as to whether a written contract existed and, if so, whether its terms were breached. *See Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). Summary judgment is improper for this reason and because we cannot say it would be impossible for White to produce the written contract through discovery.

Finally, White does not have standing to bring her claim of unlawful practice of medicine. The practice of medicine is regulated and controlled by the KBML. KRS 311.555. White alleges she may pursue her claim because Zavos is not a "licensee" under the statute. She cites to no supporting authority, perhaps because none exists.

By establishing the KBML, the General Assembly intended that "the judiciary of the Commonwealth of Kentucky, who may be caused to review the actions of the board, shall not interfere or enjoin the board's actions until all administrative remedies are exhausted[.]" *Id.*

> [N]o person shall engage or attempt to engage in the
> practice of medicine or osteopathy within this state, or

> open, maintain, or occupy an office or place of business within this state for engaging in practice, or in any manner announce or express a readiness to engage in practice within this state, unless the person holds a valid and effective license or permit issued by the board[.]

KRS 311.560(1). It is within the purview of the KBML to

> institute, in its own name, proceedings to temporarily or permanently restrain and enjoin the practice of medicine by:
>
>> (a) An individual who is not licensed to practice medicine or who is not involved in conduct specifically exempted from the requirements of this chapter by KRS 311.550(11)[.]

KRS 311.605(3). Individuals may file grievances with the KBML. KRS 311.591(2). However, KRS Chapter 311 does not provide a private cause of action for the practice of medicine without a license.[17] On this basis, White's claim must fail.

## CONCLUSION

Based on the foregoing, we affirm the Fayette Circuit Court's judgment on wrongful conception and/or birth grounds to the extent that White may not recover costs related to providing a home and financial support for her child during her minority. We also affirm the circuit court's summary judgment in favor of Baptist and Zavos on White's claims of fraud and practicing medicine

---

[17] In her amended complaint, White alleged she had standing under KRS 446.070 to pursue damages for violations of KRS 311.990(4), which makes violations of KRS 311.560 Class D felonies. She has abandoned this argument on appeal.

without a license.  We reverse and remand the court's judgment on her claims of breach of contract, battery, and violations of the KCPA.  White may proceed on her claims of breach of contract and the KCPA against Zavos, as well as Baptist under the theory of respondeat superior, and her claim of battery solely against Zavos.  Nothing in this Opinion shall be construed as barring any further dispositive motions after discovery.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Matthew S. Goeing
M. Stanley Goeing
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Matthew S. Goeing
Lexington, Kentucky

BRIEF FOR APPELLEE BAPTIST
HEALTHCARE SYSTEM, INC.:

Jeffery T. Barnett
Kimberly G. DeSimone
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEE BAPTIST
HEALTHCARE SYSTEM, INC.:

Jeffery T. Barnett
Lexington, Kentucky

BREIF FOR APPELLEE
PANAYIOTIS MICHAEL ZAVOS:

Stephen C. Keller
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE PANAYIOTIS
MICHAEL ZAVOS:

Stephen C. Keller
Louisville, Kentucky